UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LAMPE BERGER USA, INC. AND**<br>**PRODUITS BERGER, S.A.** | **CIVIL ACTION** |
| **VERSUS** | |
| **SCENTIER, INC., MICHELLE CARMAN,**<br>**AND CARMAN'S CANDLERY, INC.**<br>**D/B/A SCENTIER** | **NO. 04-354-C-M2** |

## RULING & ORDER

This matter is before the Court on the Motion to Strike Supplemental Report and Certain Testimony of Rebecca E. Szelc Beyond the Scope of Her Expert Report (R. Doc. 112) filed by defendant, Scentier, Inc. ("Scentier"). Plaintiffs, Lampe Berger USA, Inc. and Produits Berger, S.A. (collectively "plaintiffs"), have not filed an opposition to this motion.

## PROCEDURAL BACKGROUND

On January 18, 2008, the Court issued an Amended Scheduling Order (R. Doc. 100) in this matter, which set the deadlines for, among other things, the submission of expert reports. Plaintiffs' expert reports were due on April 14, 2008, and defendants' expert reports were due on May 16, 2008. According to their present motion, defendants received a copy of the report of the plaintiffs' financial expert, Rebecca E. Szelc ("Szelc"), on April 15, 2008. The report included four (4) exhibits, one of which (Exhibit II), was a "Gross Revenue Analysis" of the allegedly infringing products at issue in this case. In her report, Szelc calculated the gross revenues associated with the allegedly infringing products to be $132,361.50. Exhibit II to her report sets forth the derivation of her calculation, and Exhibit IV lists the documents that she considered in reaching her conclusion.

1

On June 13, 2008, defense counsel deposed Szelc. During the course of that deposition, Szelc produced an amendment to Exhibit II of her report. According to Scentier's present motion, the production of that document at Szelc's deposition was the first time defense counsel was made aware of that document and also the first time he was given notice that plaintiffs' claim in this suit now amounts to more that $2.4 million, as opposed to $132,361.50. On the amended version of Exhibit II, Szelc calculates the gross revenues associated with the allegedly infringing products to be $2,466,416.30, more than eighteen (18) times the amount that she provided in her report. Subsequent to Szelc's deposition, on July 15, 2008, plaintiffs sent Scentier a formal supplemental expert report for Szelc, which includes an explanation of how she changed her opinion and calculations after the expert report deadline.[1]

Through the present motion to strike, Scentier seeks to have the Court strike Szelc's supplemental report, which relies upon the amendment to Exhibit II, and to limit her testimony to the four corners of her expert report as produced to Scentier on April 15, 2008. Scentier contends that the information contained in Szelc's amended Exhibit II is not based upon any new information that was unavailable to the plaintiffs at the time Szelc's original report was prepared and is not a rebuttal of any of Scienter's expert reports. It therefore asserts that the amended Exhibit II is nothing more than an attempt by Szelc to change her

---

[1] Scentier filed a Motion to Amend and Supplement its Earlier Motion to Strike (R. Doc. 115) on July 18, 2008, wherein it explained that, since the filing of its earlier motion to strike, plaintiffs' counsel sent it a formal supplemental Szelc report. Scentier's motion to amend and supplement, which was granted on July 22, 2008 (R. Doc. 116), submitted a copy of Szelc's supplemental expert report for the Court's review.

report after the expert report deadline expired, and such an amendment should not be allowed.

## **LAW & ANALYSIS**

Local Rule 7.5M of the Middle District of Louisiana requires that memoranda in opposition to a motion be filed within twenty (20) days after service of the motion. The rule specifically provides:

> LR7.5M    Response and Memorandum
>
> Each respondent opposing a motion shall file a response, including opposing affidavits, memorandum, and such supporting documents as are then available, within 20 days after service of the motion. Memoranda shall contain a concise statement of the reasons in opposition to the motion, and a citation of authorities upon which the respondent relies. For good cause appearing therefor, a respondent may be required to file a response and supporting documents, including memoranda, within such shorter or longer period of time as the court may order, upon written ex parte motion served on all parties.

Scentier's motion to strike was filed on July 9, 2008, and the Court's electronic filing system indicates that notice of the filing of the motion was sent to plaintiffs' counsel on that same date at 2:40 p.m. CST. Thus, more than twenty (20) days have elapsed since the service of the motion, and plaintiffs have failed to file any opposition.

Although plaintiffs filed an "Unopposed Motion for Extension of Time to Respond to Defendant's Motion to Strike and Motions for Summary Judgment" (R. Doc. 118) on July 29, 2008, that motion was terminated because it was not in compliance with the local rules. On August 1, 2008, plaintiffs filed an "Unopposed Amended Motion for Extension of Response Deadline for Defendant's Motion to Strike" (R. Doc. 119), wherein they requested an Order from the Court confirming that they may file their response to Scentier's original

3

motion to strike (R. Doc. 112) on or before August 4, 2008.  Although that unopposed motion was never ruled upon, it will now be denied as moot as the August 4th deadline has passed, and plaintiffs never filed an opposition to Scentier's original motion to strike. Moreover, the twenty (20) day deadline for plaintiffs to file a response to Scentier's amended motion to strike (R. Doc. 115) expired on August 7, 2008, and plaintiffs did not file an opposition within that deadline.  Accordingly, both Scentier's original and amended motions to strike are deemed to be unopposed.

In addition to being unopposed, the Court finds that Scentier's motion to strike has merit and should therefore be granted.  Pursuant to Fed. R. Civ. P. 37(c), if a party fails to provide information required by Rule 26(a),[2] the party is not allowed to use that information at trial unless the failure was "substantially justified" or is "harmless."  Fed. R. Civ. P. 37(c)(1); *Buxton v. Lil' Drug Store Products, Inc.*, 2007 WL 2254492, *7 (S.D. Miss. 2007)(Failure to comply with the requirements of Rule 26(a) requires "automatic and mandatory" exclusion of the proffered expert opinion pursuant to Rules 26 and 37(c)(1) where the plaintiff cannot show that the violation was either "justified or harmless"). Furthermore, courts have routinely rejected untimely "supplemental" expert testimony where the opinions are based upon information available prior to the deadline for expert disclosures.  *See, Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546 (5th Cir. 1996)(purpose of supplemental expert report is to supplement - not to extend the expert disclosure deadline); *Avance v. Kerr-McGee Chem. LLC*, 2006 WL 3484246, *7

---

[2] Rule 26(a)(2)(C) provides that a party must disclose the identities of its testifying expert witnesses and their written reports at the times and in the sequence that the court orders.  Fed. R. Civ. P. 26(a)(2)(C).

4

(E.D.Tex. 2006)(excluding late-filed report where plaintiffs failed to demonstrate "substantial justification" why the revisions and new affidavits were filed after the expert deadline . . ."); *Cleave v. Renal Care Grp., Inc.*, 2005 WL 1629750, *1 (N.D.Miss. 2005)(excluding supplemental expert affidavit produced in response to summary judgment motion where plaintiff failed to identify new information which would prompt new opinions); *Salgado v. Gen'l Motors Corp.*, 150 F.3d 735, 741-43 (7th Cir. 1998)(affirming exclusion of "supplemental" expert testimony based on untimely disclosure because opinions were based on information available prior to the deadline for service of initial reports); *Buxton v. Lil' Drug Store Products, Inc.*, 2007 WL 2254492, *7 (S.D. Miss. 2007)(noting that the court was inclined to exclude the supplemental affidavit of the plaintiff's expert on the ground that the opinions contained therein were "more than a mere supplementation of his prior opinions" and were "entirely new opinions").[3]

Szelc indicated during her deposition that the amendments to Exhibit II to her report which are in question are based upon information that she did not have in her possession at the time she prepared her initial expert report. Specifically, she testified that the new

---

[3] Courts have similarly made it clear that supplemental expert reports cannot be used to "fix" problems in initial reports. *See, Reliance Ins. Co. v. Louisiana Land & Exploration Co.*, 110 F.3d 253, 258 (5th Cir. 1997)(affirming a district court's refusal to allow late supplementation of expert reports and holding: "District judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case"); *Cleave*, at *1 ("A new expert affidavit which is submitted to rebut a summary judgment motion should be stricken if the new opinion is different from the earlier Rule 26 report"); *Beller v. U.S.*, 221 F.R.D. 689, 691-95 (D.N.M. 2003)(supplemental reports cannot be used to buttress opinions or "shore up problems" in opinions contained in initial reports); *Brumley v. Pfizer, Inc.*, 200 F.R.D. 596, 603 (S.D. Tex. 2001)("A subsequent expert affidavit submitted to rebut a summary judgment motion may be excluded if it differs from an earlier Rule 26 report"); *Shelter Mut. Ins. Co. v. Culbertson's Ltd., Inc.*, 1999 WL 135297, at *4 (E.D. La. 1999)(Expert report discussing issues not included in initial report cannot be considered "supplementary").

information was derived from interrogatory responses produced by Scentier in 2006 that she did not receive from plaintiffs' counsel until after she had prepared her initial expert report. *See*, Szelc's deposition, Exhibit C to Scentier's motion, pp. 85-87. However, the amendment to Exhibit II specifically cites to Bates Nos. CC2-00094 through CC2-00096 as support for the additional $2.3 million in alleged damages sustained,[4] and Szelc's own initial expert report belies her deposition testimony because, in the list of items that she reviewed to prepare her initial report (set forth in Exhibit IV to her initial report), she listed Bates Nos. CC2-00094 through CC2-00096, indicating that she had those documents in her possession at the time she prepared her initial report and therefore could have calculated the additional $2.3 million in alleged damages within the expert report deadline. Furthermore, even assuming Szelc relied upon Scentier's 2006 interrogatory responses in preparing her supplemental report and that she did not have those responses in her possession at the time she prepared her initial expert report, the Court agrees with Scentier that plaintiffs' counsel's failure to provide her with all of the information necessary to form her opinions prior to expiration of the expert report deadline (particularly when plaintiffs' counsel had been in possession of Scentier's interrogatory responses since 2006) is not a sufficient justification for disregarding the court-imposed expert deadline and allowing Szelc to now change her opinion regarding damages to a tune of $2.2 million dollars.

---

[4] *See*, R. Doc. 115-2, where Szelc specifically notes at the bottom of her amended "Gross Revenue Analysis" that the update to her preliminary calculation is based upon CC2-00094 through CC2-00096 and assumes that the fragrances depicted on the schedule titled "SCENTIER Sales by Item Summary" were sold in containers that violated Lampe's protectible interest in the Crystal Look Fuel Bottle.

The Court further finds that Scentier's reliance upon this Court's ruling in *Simmons v. Johnson*, 2008 WL 474203 (M.D. La. 2008), is appropriate.  In that case, the plaintiff attempted to submit a "supplemental expert report" after the expert report deadline; however, that report indicated that the plaintiff's expert who prepared the report had reviewed the exact same documents in connection with the supplemental report that he had reviewed in connection with his original, timely expert report.  *Id.*, at *2.  The Court explained that untimely "supplemental" expert reports and testimony are routinely rejected where the opinions are based upon information available prior to the deadline for service of initial expert reports and held that the plaintiff could not "skirt the [expert] disclosure requirements" of Rule 26 by characterizing "new" opinions" in the supplemental report as "supplemental."  The Court also found that the plaintiff had failed to provide any "substantial justification" or explanation for the plaintiff's expert's failure to include the opinions contained in the supplemental report in his original report.  *Id.*  Finally, the Court concluded that the introduction of the plaintiff's expert's supplemental report (and testimony related thereto) would not be "harmless," as the deadline for the defendants to identify an additional expert to address the topics contained in the supplemental report had already expired and because several continuances of expert discovery deadlines had already been allowed.  *Id.*, at *3.

Similarly, in the present case, plaintiffs, in not filing an opposition to Scentier's motion to strike, have failed to provide any "substantial justification" or explanation for Szelc's failure to include the damage opinion contained in her supplemental report in her original report.  Furthermore, the introduction of Szelc's supplemental report (and testimony related thereto) at trial would not be "harmless," as the deadline for Scentier to identify an

7

additional expert to address the topics contained in Szelc's supplemental report (and the deadlines to have that additional expert produce a rebuttal report and to be deposed) have expired.[5]  Finally, as in *Simmons*, the expert deadlines in this matter have already been extended on four (4) occasions during the course of this litigation since 2004.  *See*, R. Doc. 65 (setting deadlines for identification of experts in June 2006, for expert reports in July 2006, and for expert depositions through September 2006); R. Doc. 83 (setting deadlines for identification of experts in January 2007; for expert reports in February 2007; and for expert depositions through March 2007); R. Doc. 92 (setting deadlines for identification of experts in January 2008; for expert reports in February 2008; and for expert depositions through March 2008); R. Doc. 100 (setting deadlines for identification of experts in March and April 2008; for expert reports in April and May 2008; and for expert depositions through June 16, 2008).  The parties have finally complied with the deadlines set forth in the fourth scheduling order in this matter by timely submitting expert reports and taking the deposition of plaintiff's expert on June 13, 2008.

To allow Szelc's untimely, supplemental report into evidence would simply flout the deadlines this Court has been reluctant to extend on several occasions[6] and would further delay expert discovery in this matter, as extensions would again have to be made for Scentier to identify and provide the report of another expert to address the new damages

---

[5] The deadline for Scentier to disclose the identities and resumes of its expert witnesses was April 14, 2008; the deadline for its expert reports was May 16, 2008; and the deadline for deposing experts was June 16, 2008.  *See*, R. Doc. 100.

[6] *See,* January 17, 2008 Order, R. Doc. 100, wherein the Court specifically noted that, "[C]onsidering the opposition to [plaintiffs' motion for an extension of deadlines], **no other extension will be allowed**."

8

opinion in Szelc's supplemental report. This Court has an inherent power to control its docket and to prevent undue delays in the disposition of pending cases,[7] which it chooses to exercise herein.[8] Accordingly, Scentier's motion to strike will be granted, and Szelc's supplemental report will be excluded from this matter, limiting her testimony and opinions to those set forth in her original expert report produced on April 15, 2008.[9]

---

[7] *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 884 (5th Cir. 2004); *Boudwin v. Graystone Ins. Co. Ltd.*, 756 F.2d 399 (5th Cir. 1985); *U.S. v. Hughey*, 147 F.3d 423 (5th Cir. 1998).

[8] Fed. R. Civ. P. 16(b) also provides that a scheduling order limiting the time to complete discovery "shall not be modified except upon a showing of good cause and by leave of the district judge." Plaintiffs neither demonstrated good cause nor sought leave from this Court to submit Szelc's supplemental report outside the deadlines set forth in the Court's most recent scheduling order dated January 17, 2008. *Buxton*, at *7 (Exclusion of an untimely supplemental expert report is appropriate pursuant to Rule 16(b), which "authorizes the district court to control and expedite pretrial discovery through a scheduling order" and which gives the court "broad discretion to preserve the integrity and purpose of the pretrial order," including the exclusion of evidence as a means of enforcing the pretrial order); *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990); *1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281 (5th Cir. 1991)(A district court has discretion to control pretrial discovery and sanction a party's failure to follow a scheduling order, and such action is "particularly appropriate" where a party has failed to provide an adequate explanation for their failure to comply with the court's scheduling deadlines).

*See also,* Fed. R. Civ. P. 6(b), which provides that, when an order of the court requires an act to be done at or within a certain time, the court (1) with or without motion or notice, may order the period enlarged if request therefore is made before the expiration of the period originally prescribed or as extended by a previous order; or (2) upon motion made after the expiration of the specified period permits the act to be done, where the failure to act was the result of excusable neglect . . ." Fed. R. Civ. P. 6(b). Again, plaintiffs have not demonstrated that their failure to submit Szelc's opinions contained in her supplemental report prior to the Court-imposed deadline was a result of any type of excusable neglect.

[9] The Fifth Circuit, in *Geiserman*, indicated that the following four (4) factors are to be considered when determining whether to exclude an expert report: (1) the explanation for the failure to comply with the rules, which has not been provided in this case; (2) the importance of the testimony; (3) the potential prejudice or harm in allowing

9

Accordingly;

**IT IS ORDERED** that the Motion to Strike Supplemental Report and Certain Testimony of Rebecca E. Szelc Beyond the Scope of Her Expert Report (R. Doc. 112) filed by defendant, Scentier, Inc., is hereby **GRANTED** and that the supplemental expert report and testimony related thereto of plaintiffs' expert, Rebecca Szelc, shall be **EXCLUDED** from this matter.[10]

---

the testimony, also discussed above; and (4) the availability of a continuance to cure any such prejudice.  As to the second factor, even assuming that Szelc's supplemental report is important to plaintiffs' case, the Fifth Circuit has stated that "the importance of proposed [expert] testimony cannot 'singularly override the enforcement of local rules and scheduling orders'."  *Hamburger*, at 883, citing *Geiserman*, at 792.  The Fifth Circuit has also noted that, with respect to potential prejudice, a delay of even a few weeks in disclosing expert testimony, as in this case (where several months elapsed between plaintiffs' expert report deadline and the submission of Szelc's supplemental expert report), disrupts a court's schedule and the opponent's preparation and is thus prejudicial.  *Geiserman*, at 791; *Williams v. Gonzales*, 2005 WL 3447885, at *6 (E.D. Tex. 2005)("Disruption of the court's discovery schedule and the opponent's preparation constitutes sufficient prejudice to militate in favor of the exclusion of [expert] testimony").  Finally, although a continuance could possibly cure the prejudice by allowing Scentier an opportunity to identify an additional expert and have he/she provide a report regarding the damages opinions addressed in Szelc's supplemental report, this would obviously result in additional delay and increase the expense of defending this lawsuit.  *Hamburger*, at 883 (citing *Geiserman*, at 792).  Because of a trial court's need to control its docket, a party's violation of the court's scheduling order should not routinely justify continuances.  *Id.*  Otherwise, as the Fifth Circuit reasoned in *Hamburger*, "the failure to satisfy the rules would never result in exclusion, but only in a continuance."  *Id.; See also, Robbins v. Ryan's Family Steak Houses East, Inc.*, 223 F.R.D. 448 (S.D. Miss. 2004)(excluding supplemental expert testimony and noting violation of scheduling order should not routinely result in a continuance).

[10] Since the Court already granted Scentier's Motion to Supplement the Earlier Filed Motion to Strike Supplemental Report (R. Doc. 115) on July 22, 2008, allowing Scentier to supplement the record with a copy of Szelc's supplemental report for the Court's review, that motion need not be disposed of herein.  *See*, R. Doc. 116.

**IT IS FURTHER ORDERED** that the "Unopposed Amended Motion for Extension of Response Deadline for Defendant's Motion to Strike" (R. Doc. 119) filed by plaintiffs is hereby **DENIED AS MOOT**.

Signed in chambers in Baton Rouge, Louisiana, August 8, 2008.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**